Douglas Wayne BEATY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–00–521 CR.

Court of Appeals of Texas,
Beaumont.

July 11, 2001.

Stephen Christopher Taylor, Galveston, for appellant.

Scott W. Rosekrans, Crim. Dist. Atty., Coldsprings, for State.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

Douglas Wayne Beaty appeals the trial court's decision to grant the State's motion to revoke his community supervision. Beaty was sentenced to three years' confinement in the Texas Department of

Criminal Justice, Institutional Division. On appeal, Beaty claims the trial court erred in finding the State exercised due diligence in apprehending him after capias was issued for his arrest.

The Court of Criminal Appeals' decisions applying the due diligence standard have typically involved circumstances in which the probationer is not trying to avoid apprehension and his location is known. Under those circumstances, the Court has usually found a lack of due diligence when the State's efforts to locate the probationer are non-existent or minimal. *See Harris v. State*, 843 S.W.2d 34, 36 (Tex.Crim.App.1992); *Rodriguez v. State*, 804 S.W.2d 516, 518 (Tex.Crim.App. 1991); *Langston v. State*, 800 S.W.2d 553, 555 (Tex.Crim.App.1990). In contrast is the holding in *Strickland v. State*, 523 S.W.2d 250, 251 (Tex.Crim.App.1975), where the Court found due diligence by the State when the probationer did not report his address change. Here, the trial court heard evidence that Beaty had "taken off" and left the county. The probation officer, as a result, had no way to contact him. Beaty did not report his whereabouts to his own family, and the only "address" law enforcement authorities had for him was his parents' post office box (P.O. Box 526) in Goodrich, Texas.

 The record supports the trial judge's revocation of probation and, inferentially, his conclusion that the State exercised due diligence. We will explain further. A trial court has jurisdiction to revoke probation provided that (1) the revocation motion, alleging violations of the terms of the probation judgment, was filed prior to expiration of the probationary period, and (2) the trial court issued a capias or arrest warrant, based on the motion, before the probationary term expired. See *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex.Crim.App.1999). In addition to satisfying the jurisdictional requirements, the State also must demonstrate it exercised due diligence in apprehending the defendant and in hearing the allegations on the revocation motion once the issue is raised by the probationer. *See id;* see also *Rodriguez*, 804 S.W.2d at 518–19.

 The lack of due diligence is a defense or plea in bar, not an affirmative defense. *Brecheisen*, 4 S.W.3d at 763. If the defendant meets the burden of production by raising the due diligence issue at the revocation hearing, the State then has the burden of persuasion to show by a preponderance of the evidence that it exercised due diligence. *Id.* (State has burden of persuasion on due diligence.); *Burch v. State*, 821 S.W.2d 385, 387 (Tex.App.— Waco 1991, no pet.) (State must prove due diligence by preponderance of evidence.). In reviewing a probation revocation, the court of appeals uses an abuse of discretion standard and reviews the evidence in the light most favorable to the trial court's order. *See Kaylor v. State*, 9 S.W.3d 205, 206 (Tex.App.—San Antonio 1999, no pet.).

 In the instant case, the motion to revoke probation was filed, and the capias issued, prior to expiration of the probationary term; however, Beaty was arrested after the probationary term expired. The relevant dates are as follows: Beaty was convicted and placed on community supervision on May 6, 1997; on August 12, 1999, the State filed its motion to revoke probation, alleging Beaty violated certain provisions of his probation; capias issued on August 16, 1999; the probationary period expired on May 6, 2000; the date of Beaty's arrest was October 26, 2000; judgment revoking community supervision was November 20, 2000. The significant time period—between the arrest order (August 16, 1999) and the date of arrest (October

26, 2000)—represented fourteen (14) months.

At issue here is (1) whether the State met its burden of explaining any delay in apprehending Beaty and of showing by a preponderance of the evidence that it exercised due diligence in attempting to apprehend him, and (2) whether, in reviewing the evidence submitted to it, the trial court abused its discretion in granting the motion to revoke. The evidence supporting the trial court's judgment is summarized below:

1. Beaty began reporting to probation officer Joe Sewell when Sewell took over the Shepherd office in February 1998.

2. The address that Sewell, the probation officer, had for Beaty was Beaty's parents' post office box (P.O. Box 526) in Goodrich, Texas.

3. Beaty's sister, Martha Crumpton, picked up his mail, along with that of others, at the post office box in Goodrich where he had always received his mail. The only person that contacted her about Beaty was a bail bondsman from San Jacinto County. On cross examination by the State, Crumpton testified she did not know if the probation office or Sheriff Rogers knew she was Beaty's sister or that she even existed. She did not know where Beaty had been for the past two years. He was not there to pick up his mail. She testified she put the mail in "baggies" until she saw him again.

4. Sewell testified Beaty's daughter told him Beaty had left the county. The daughter's name was on Sewell's list as someone to contact regarding Beaty. The daughter was concerned because she was obligated on Beaty's bond for his second DWI arrest, and she did not know where he had gone.

5. Once the capias on Beaty issued, Sheriff Rogers [1] entered the warrant in the TCIC data base in Austin. The import of that act was that any time a law enforcement officer stopped the person and ran a warrant check on him, the officer would know there was a warrant for his arrest and bring him in.

6. The sheriff knew Beaty's family from other encounters and had known Beaty himself for at least ten years. When Sheriff Rogers was at the home of Beaty's sons in Shepherd in the latter part of 1999, on two different occasions Rogers asked them if they had seen Beaty. They were not able to tell Rogers where Beaty was and indicated they had not seen him in a while.

7. Rogers also told the sons' neighbor to inform him (the sheriff) if she saw Beaty.

8. A driver's license check on Beaty was run September 10, 1999.

As demonstrated by the evidence, this is not a case where the State knew where Beaty was and then did nothing; neither is it a case where the State offered no explanation for the delay in apprehending the absent probationer.

The Court of Criminal Appeals has found a lack of due diligence by the State where a significant amount of time elapsed between the critical dates, and no meaningful effort was made to locate the probationer. *See Harris,* 843 S.W.2d at 36 ("Appellant never left the county except to

---

1. The sheriff testified his department had approximately one hundred outstanding warrants; he indicated that if he assigned his whole department (fourteen people) to do warrant work, their entire time could be taken up with efforts to execute on the warrants.

live with relatives known to the probation department."); *Rodriguez*, 804 S.W.2d at 518–19 (Probationer was not in hiding, and State knew his address and place of employment.); *Langston*, 800 S.W.2d at 555 (Probationer was not in hiding, and authorities were aware of his correct address during the entire period.). In each of the cases cited above, the defendant was not in hiding,[2] his location was known, and there were inexplicable lapses in activity between the time the capias was issued and the time the probationer was apprehended. Contrast those holdings with that in *Strickland*, 523 S.W.2d at 251. There the Court concluded a delay of eight (8) months from the issuance of a warrant until its execution did not constitute a lack of due diligence where the probationer did not report his change of address. *Id.* at 251.

Beaty's case is distinguishable from *Harris, Rodriguez,* and *Langston,* in part, because the State explained why Beaty had not been arrested earlier. The tenor of the State's explanation is that even though attempts had been made to locate Beaty, he was avoiding apprehension. We hold that the State presented sufficient evidence to satisfy its due diligence burden. The trial court did not abuse its discretion in revoking Beaty's probation. The trial court's judgment is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. However I review the record slightly different than the majority. The record reflects capias issued August 16, 1999, and Beaty was arrested October 26, 2000, constituting a delay of fourteen months. At the hearing, the State presented evidence of due diligence through the testimony of Joe Sewell, senior probation officer for San Jacinto County, and Sheriff Lacy Rogers of San Jacinto County.

Sewell testified the address he had for Beaty was P.O. Box 526, Goodrich, Texas, and when necessary he contacted Beaty through the mail. After August 12, 1999, no letters were sent to Beaty. Sewell testified he did not attempt to contact Beaty because his daughter said he left the county and "[i]t wasn't any use." Sewell admitted that from time to time Beaty worked outside the county. Sewell did not call any family member and made no attempt to contact Beaty after August 10, 1999. According to Sewell, Beaty's daughter did not know where he was and therefore he had no way to contact Beaty.

Sheriff Rogers of San Jacinto County testified the capias was entered into TCIC. After that, on two occasions when Sheriff Rogers was in the neighborhood, he asked Beaty's sons, who live in Shepherd, "if they saw him." They said they had not. Sheriff Rogers did not ask the boys if they knew how to contact Beaty. Sheriff Rogers also asked a neighbor of the boys to let him know if she saw Beaty. Sheriff Rogers' file reflected Beaty's driver's license was run in September of 1999. No check was made of social security records to determine if Beaty was working under a social security number and no check was made of the probation files to determine if there were any acquaintances that might be contacted.

The burden was on the State to show due diligence. *See Harris v. State*, 843 S.W.2d 34, 35 (Tex.Crim.App.1992). No

---

**2.** We question whether any diligence is due a probationer who hides from the law. To hold the State must show it exercised due diligence in such a context seems to reward the proba-tioner for his skill in evading arrest. Here, we need not address that issue, because we hold the State presented sufficient evidence to satisfy any due diligence burden.

attempt was ever made to contact Beaty through his mailing address and no one ever went to his home. Beaty was employed as a millwright with Union 232. The record does not reflect any queries were ever made to the Union. Under this record, the trial court's determination that the State exercised due diligence was erroneous.

The majority, when they state; "In each of the cases cited above, the defendant was not in hiding" infers Beaty was in fact hiding; yet there is absolutely *no* evidence of that fact. Furthermore, they must resort to the sentence: "The tenor of the State's explanation is that even though attempts had been made to locate Beaty[3], he was avoiding apprehension." Once again, there is absolutely *no* evidence that Beaty was avoiding apprehension. Under the majority's logic, once a probationer fails to report; then that is evidence of "hiding" and "avoiding apprehension" and this somehow lessens the state's burden to show diligence in attempting to apprehend the probationer. This is not the law, nor should it be.

I would, in accordance with *Brecheisen v. State,* 4 S.W.3d 761, 764–65 (Tex.Crim. App.1999), reverse the judgment of the trial court and remand the case with directions to dismiss the motion to revoke community supervision.

3. The above cited evidence reveals these attempts were minimal, at best.